FILED

2014 APR -7 P 2:53

US DISTRICT COURT
BRIDGEPORT CT

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

**STATE OF CONNECTICUT** : **ss: BRIDGEPORT**

**FAIRFIELD COUNTY** : **APRIL 4, 2014**

3:14mj 57(HBF)

**AFFIDAVIT**

I, ANABELA SHARP, being duly sworn, depose and say that:

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed for approximately nine (9) years. During the course of my career as a Special Agent with the FBI, I have conducted investigations into matters including material support, narcotics, weapons violations, document fraud, immigration fraud, money laundering, as well as other matters. Beginning on February 22, 2011, I was assigned to the FBI's New Haven Division. Prior to that, from January 23, 2005 to February 21, 2011, I was assigned to the FBI in New York where I was assigned to the Criminal Division and then to the Joint Terrorism Task Force. I am currently assigned to the FBI New Haven Division's Joint Terrorism Task Force.

2. As a Special Agent with the FBI, I am an investigative or law enforcement officer of the United States and am empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 18 of the United States Code.

**The Target**

3. I am currently participating in an investigation by FBI New Haven's Joint Terrorism Task Force, the Homeland Security Investigations (HSI) New Haven Resident Office, and the Office of the HSI attaché in Casablanca, Morocco. I make this affidavit in support of an application for a warrant to arrest an adult male known as EL MEHDI SEMLALI FATHI ("FATHI") on one

count of violating 18 U.S.C. Section 1001 (false statement), one count of violating 18 U.S.C. Section 1546 (false swearing in immigration matter) and one count of violating 18 U.S.C. Section 1621 (perjury). FATHI is currently residing in Bridgeport, Connecticut.[1] As explained more fully below, I have determined that FATHI is a native and citizen of Morocco and is subject to a final order of removal. FATHI did, however, receive withholding of removal relief on or about August 16, 2013 based on his claim of fear of persecution based on political opinion. This relief currently precludes the United States from removing FATHI to his native Morocco. As set forth more fully below, there is probable cause to believe, and I do believe that FATHI's application for withholding of removal status was obtained by fraud. The fraud included, but is not limited to, FATHI's claims that he was repeatedly arrested by the Moroccan government and assaulted by government officials. Moreover, in his application for refugee status, FATHI claimed that the government of Morocco believed that he was a member of an organization known as ansar El Mehdi and that while he was attending a university in Marrakech he participated in demonstrations and he (FATHI) was arrested in 2007 by the Moroccan government because the Moroccan government believed that he was a member of this organization. As discussed in greater detail below, the Moroccan government, FATHI's father, and FATHI's own statements confirm that FATHI was never arrested or charged with a crime in Morocco, nor did he ever attend any university in Marrakech.

4. Based on the contents of this affidavit, I submit that there is probable cause to believe and I do believe that EL MEHDI SEMLALI FATHI, in the District of Connecticut and

[1] During the course of the investigation, I have seen or reviewed materials in which the target's last name has been referred to as "Fathi," while other materials (some of which appear to have been prepared by Fathi himself), refer to his last name as "Semlali." Insofar as official records, including the target's birth certificate, refer to him as El Mehdi Semlali Fathi, with the last name of Fathi, he is referred to herein as "Fathi."

elsewhere, made false statements to a federal law enforcement agent in violation of 18 U.S.C. §

1001, has executed and submitted a false and frivolous asylum application in violation of 18

U.S.C. § 1546, and has made repeated false statements under oath to an Immigration Judge in

violation of 18 U.S.C. § 1621.

     5.   In addition to having probable cause to believe that FATHI has completed the

aforementioned criminal activity, I have reason to believe, and I do believe, that FATHI poses a

danger to the community based on recent statements.  Specifically, FATHI has repeatedly stated

his intention and desire to bomb two locations:  (1) an educational university outside the State of

Connecticut; and (2) a federal building / courthouse in Connecticut.  Thus, and as set forth in

greater detail below, in addition to the aforementioned criminal immigration fraud charges that

form the basis of this application, FATHI is also currently under a federal criminal investigation

as a result of these bombing threats.

     6.   I am personally participating in the investigation of violations of federal law by

FATHI. The facts comprising the basis for this affidavit are derived from the following sources:

    (a)    Oral and written reports of other law enforcement officers;

    (b)    Interviews with other law enforcement officers;

    (c)    Reliable information received during the course of the investigation;

    (d)    Interviews of witnesses;

    (e)    Audio recordings of FATHI; and

    (f)    Information and evidence obtained from interviews of witnesses residing
             in Morocco.

Since this affidavit is being submitted for a limited purpose, I have not included each and

every fact that I know concerning the investigation. I have only set forth those facts that I believe are necessary to establish probable cause for the arrest warrant sought by this application.

## Legal Authorities

### A. Federal Criminal Law

7. Title 18, United States Code, Section 1001, which relates to false, fictitious or fraudulent statements, provides, in pertinent part that:

> Whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully –
>
> (a) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
>
> (b) makes any materially false, fictitious, or fraudulent statement or representation; or
>
> (c) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;
>
> shall be [subject to punishment].

*See* 18 U.S.C. § 1001.

8. Title 18, United Sates Code, Section 1546, relates to making a false statement in an immigration matter and makes it a crime to knowingly made under oath a false statement with respect to a material fact in an application for immigration benefits. The elements of the crime are as follows:

> (a) The defendant subscribed as true a false statement;
>
> (b) The defendant acted with knowledge that the statement was untrue;
>
> (c) The statement was material to the activities or decisions of the Executive Office for Immigration Review that is, it had a natural tendency to influence, or was capable of influencing, the agency's decisions or activities;

      (d)     The statement was made under penalty of perjury; and

      (e)     The statement was made on an application for refugee status required by immigration laws or regulations.

*See* 18 U.S.C. § 1546.

9.  Title 18, United States Code, Section 1621, makes it a crime to make a false statement under oath.  The elements of this crime are as follows:

      (a)     The defendant must be under oath during the testimony;

      (b)     The defendant made a false statement;

      (c)     The defendant willfully made the false statement with knowledge of its falsity, rather than a result of confusion, mistake or faulty memory; and

      (d)     The false statement must be material to the proceedings.

*See* 18 U.S.C. § 1621.

**B.  Federal Immigration Law**

10.  *Withholding of Removal.*  I am advised and it is my understanding that two forms of relief are potentially available to aliens claiming that they will be persecuted if removed from this country: asylum and withholding of removal.  *See* 8 U.S.C. §§ 1158(a), 1231(b)(3)(2013); *Zhang v. Slattery*, 55 F.3d 732, 737 (2d Cir. 1995).  I am further advised that, although these types of relief are "closely related and appear to overlap," *Carranza-Hernanez v. INS*, 12 F.3d 4, 7 (2d Cir. 1993) (citation omitted), the standards for granting asylum and withholding of removal differ, *see INS v. Cardoza-Fonseca*, 480 U.S. 421, 430-32.  Here, based on a review of FATHI's immigration file, he was precluded from applying for asylum because he did not file his application within one year after the date of his arrival in the United States. *See*  8 U.S.C. § 1158(a)(2)(B).  FATHI instead made an application for withholding of removal.  I am further advised that, unlike the discretionary grant of asylum, withholding of removal is mandatory if the

alien proves that his "life or freedom would be threatened in [his native] country because of [his] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A); *Zhang*, 55 F.3d at 738. It is my understanding that, to obtain such relief, the alien bears the burden of proving by a "clear probability," *i.e.*, that is it is "more likely than not," that he would suffer persecution on return. *See* 8 C.F.R. § 208.16(b)(2). Here, FATHI's claim of persecution was based on his claim of political opinion and his allegations that he was arrested multiple times by the Moroccan government for protesting while he was attending a university in Marrakech. As set forth in more detail below, however, FATHI did not attend any university in Marrakech nor was he ever arrested and convicted of any crimes in Morocco.

**FACTS AND CIRCUMSTANCES**

**A. Fathi's Background and Entry into the United States**

11. EL MEHDI SEMLALI FATHI is a native and citizen of Morocco. Based on his birth certificate and other documents obtained from FATHI's parents in Morocco, FATHI was born on September 26, 1987 in Marrakech and he is a Moroccan citizen. *See* Ex. A. The birth certificate provides the names of his mother and father. Federal law enforcement agents who are currently stationed in Casablanca, Morocco interviewed FATHI's father in March 2014. A copy of FATHI's parents' identification documents were obtained by the federal agents. Federal agents were also able to obtain copies of FATHI's educational records which confirm that he was enrolled in Abdelmalek Essaadi high school in the city of Kenitra in Morocco. *See* Ex. B. The educational records confirm that FATHI completed high school in July 2006. That information was also corroborated by FATHI's parents who told federal law enforcement that FATHI attended primary school in Errachidia and in Al Romani, pre-high school in Romani and Larache, and high school in Larrache and Kenitra. FATHI's parents also told the agents that

FATHI never attended any university in Marrakech.  Furthermore, FATHI's parents confirmed that from September 2006 until June 2007 that FATHI completed two college courses in Business English and Computers at two separate local colleges in Kenitra and subsequently traveled to the United States for college. FATHI's parents confirmed that FATHI had resided with them and that he never resided in Marrakech or went to school there.  In fact, FATHI's father informed federal agents that their family lived in special administrative neighborhoods in secured and gated communities.  Moreover, HSI federal agents stationed in Casablanca, Morocco were able to obtain documentation from FATHI's parents that confirmed FATHI was enrolled in a Microsoft Access course at the Business English Centre in Kenitra from September 1, 2006 until June 30, 2007.  Finally, federal agents were able to obtain a Ministry of Justice document showing that FATHI was never charged or sentenced for any crimes in Morocco. *See* Ex. C.  FATHI's parents were asked by federal agents in Morocco about his son's criminal history and confirmed that his son (FATHI) never had any criminal issues, was never detained, arrested or incarcerated in Morocco and that his son has never had any problems with the Moroccan authorities.

12.  On or about August 2, 2007, FATHI submitted an online application for admission to attend Virginia International University.  In that application, FATHI stated that the highest level of education that he had attained was high school which was corroborated by the educational records that were provided by FATHI's parents. On or about September 10, 2007, FATHI applied for a nonimmigrant student visa stating that he was seeking to attend Virginia International University located in Fairfax, Virginia.  In that visa application, dated September 10, 2007, FATHI answered "No" to the following question:  "Have you ever been arrested or convicted for any offense or crime, even though subject of a pardon, amnesty or other similar

legal action?" The visa was subsequently approved and issued on or about September 24, 2007. In his application to Virginia International University, FATHI stated that the highest degree earned was high school and that he attended Abdelmalek Essaadi high school from 2003-2006 in Kenitra which was confirmed by the educational records recently obtained by federal agents from FATHI's parents in Morocco. *See* Ex. B. In the visa application, FATHI stated that he was enrolled in computer courses in Kenitra beginning in 2006.

13. FATHI was admitted as a student on January 8, 2008, at Washington, Dulles International Airport in Washington, DC. FATHI's student visa status was terminated on or about February 20, 2009 by Virginia International University after he failed all of his classes during the Fall 2008 semester and he failed to register for classes for the Spring 2009 semester.[2]

## B. Fathi's Criminal and Immigration History

14. On or about December 19, 2010, FATHI was arrested in Fairfax, Virginia for trespassing. Those charges were subsequently dismissed. On the date of his criminal arrest, however, Enforcement and Removal Operations (ERO) – Secure Communities (Fairfax) of DHS was notified of FATHI's arrest. An ERO Immigration Enforcement Agent (IEA) interviewed FATHI after he was booked into Fairfax Adult Detention Center to positively determine his alienage and removability. After successfully making that determination (confirming he was a citizen and native of Morocco and without legal status in the United States), ERO placed an immigration detainer on FATHI. On or about March 14, 2011, pursuant to that detainer, FATHI

[2] In his I-602 application for waiver of grounds of excludability which was subsequently denied because FATHI was ineligible, FATHI stated that the reason he left Virginia International University was because he had financial problems. More specifically, he stated: "My father was not able to send me enough money to pay my university studies, so I could not attend classes at the university." FATHI's parents told the HSI federal agents during the interview that they provided him financial support while he was a student but stopped providing him with financial support once FATHI was no longer studying because they believed that if FATHI was not going to study then he should return home.

was transferred to ERO custody. On or about March 14, 2011, FATHI was also served with a Notice to Appear (NTA) charging him as removable from the United States because he had no legal status in the United States.

15.    Based on a review of FATHI's certified court file, FATHI appeared by video before an immigration judge in Arlington, Virginia in April 2011. At that time, FATHI admitted that he was a native and citizen of Morocco and that he had stopped attending Virginia International University. Based on those admissions, the Immigration Judge found FATHI removable from the United States. FATHI indicated that he wished to apply for refugee status. From the time of his initial entry into the United States, FATHI never affirmatively sought asylum nor did he tell any U.S. authorities about his Moroccan arrests until after his 2011 criminal arrest and detention based on the Virginia trespassing charges. At his hearing, the Immigration Judge ensured that FATHI was provided with an I-589 form so that he could complete and file his refugee application and scheduled a new date for FATHI's immigration hearing. Subsequently, at the next hearing, in or about June 2011, FATHI made an application for bond. At the next hearing, the Immigration Judge acknowledged receiving FATHI's I-589 application and also set bond in the amount of $7,000 dollars. On or about June 27, 2011, FATHI was able to pay his bond and was released from immigration custody. After his release from immigration custody, FATHI moved to Connecticut.

16.    FATHI's immigration case was transferred to an Immigration Judge in Hartford, Connecticut. At an immigration hearing on or about September 7, 2011, FATHI appeared in immigration court with counsel and acknowledged that he had completed an I-589 refugee application and that all of the information on the I-589 form was accurate.

17. In his written application for refugee status (I-589), FATHI sought asylum and withholding of removal based on his political opinion and membership in a particular social group. Based on a review of FATHI's I-589 refugee application, attached hereto as Ex. D., it appears that FATHI claimed that he would be persecuted by the Kingdom of Morocco based on his membership in a particular social group because he was a member of a student union at Alkady Ayyad University in Marrakech that supported pro-independence demonstrations and his membership in the Sahrawi Collective of Human Rights Defenders (CODESA), which he (FATHI) claimed supported Western Sahara independence between September 2006 and July 2007. In direct contradiction to his student visa application filed with the State Department – where he stated that he was never arrested – in his refugee application FATHI claimed that he was arrested twice in 2007 by the Moroccan government and was persecuted by the Moroccan government. In his I-589, FATHI also claimed that he attended Alkady Ayyad University in Marrakech from September 2006 until June 2007.[3] Moreover, as noted above, in both his application to Virginia International University and his student visa application, FATHI did not provide any information about attending any university in Marrakech. FATHI's father has also confirmed that he never attended any university in Marrakech. Moreover, federal law enforcement authorities have obtained documentation from FATHI's parents that demonstrates that FATHI was enrolled in a Microsoft Access course from September 1, 2006 until June 30, 2007 in Kenitra.

18. In his I-589 application for refugee status, FATHI also claimed that he would be persecuted based on, among other things, imputed political opinion. Based on a review of the written refugee application, FATHI claimed that the Kingdom of Morocco believed that he was a

[3] The distance between Kenitra and Marrakech is approximately 232 miles.

member of ansar El Mehdi which he (FATHI) stated that his uncle was a member of and acknowledges that it was a group seeking to overthrow the monarchy.  Among his statements in his written application, FATHI stated the following:

      i.    "In February 2007, I was arrested in a peaceful demonstration of approximately 50 person[s] in support of Western Sahara independence, as soon as the police officer put me in the transport van they started beating me, and once they took me to the police station I received an even worse treatment, and they released me after 24 hours."

      ii.    "In May 9, 2007, I participated in a peaceful demonstration supporting my friends and fellow undergraduates from Western Sahara in a pro-independence demonstration in Marrakech, I was arrested, taken to a police station, beaten savagely, and detained for days without the knowledge of my parents and without knowing what I have been charged with, and also they tried to make me sign some appears that I did not read nor sign, and when I refused they threatened me that they were going to make me sit on a bottle and that they were going to use electricity on me."

      iii.    "I was accused of being involved with the so-called ansar El Mehdi group, the group that was trying to overthrow the government of Morocco, that was because I participated in many demonstrations in support of Western Sahara independence, and more importantly because of the involvement of a family member with ansar El Mehdi group, so there is an APB against me in Morocco, so if I returned to Morocco I will be arrested, detained, and tortured.  And it is more likely than not that I will be sentenced to 25 year in prison like the other members of the group."

      iv.    In Part D of the refugee application, FATHI signed the form after the following certification: "I certify, under penalty of perjury under the laws of the United States of

America, that this application and the evidence submitted with it are all true and correct. . ." citing to 18 U.S.C § 1546(a) and 28 U.S.C. § 1746.

19. In support of his refugee application, FATHI provided the Immigration Court and the immigration trial attorney with various State Department country reports for Morocco. Exhibit 5 in support of FATHI's refugee application was a 2006 Country Report for Morocco which discussed egregious human rights abuses including arbitrary detentions and disappearances from 2004 until 2005. The 2006 Country Report also discussed specific individuals (not FATHI) who were beaten for their support of the Western Sahara independence movement. Exhibit 6 at page 3 in support of FATHI's refugee application was the 2007 Country Report for Morocco which makes reference to 52 individuals who were arrested as part of the ansar El Mehdi case in August 2006 "on charges of conspiring to overthrow the monarchy through terrorism." Moreover, publically available information makes clear that ansar El Mehdi was disrupted by the Moroccan authorities in 2006. Federal agents in Casablanca, Morocco have confirmed that ansar El Mehdi was dismantled by the Moroccan authorities in 2006. Therefore, FATHI's claims that he was arrested in 2007 as part of the ansar El Mehdi arrests is unsupported.

20. In a more detailed written summary of his claimed persecution, FATHI stated that on May 9, 2007, he participated in a peaceful demonstration to support Western Sahara in a pro-independence demonstration. FATHI claimed that he was "arrested, taken to a police station, beaten savagely, and detained for days without the knowledge of my parents and without knowing what I have been charged with." FATHI further claimed that he was hospitalized and that his father learned of his arrest when he was taken to the hospital. FATHI claimed that when his father's lawyer asked for the reasons why he was detained, "they told him that I was a suspect of being involved with the so-called ansar El Mehdi group." FATHI stated that in

August 2006, his uncle was a member of ansar El Mehdi the group that conspired to overthrow the government of Morocco. FATHI also wrote that in February 2007, he was "arrested in a peaceful demonstration of approximately 50 person in support of Western Sahara independence, and as soon as the police officers put me in the transport van they started beating me, and once they took me to the police station I received even worse treatment, but I was released after 24 hours of the arrest."

21. After confirming for the Immigration Judge in Hartford, Connecticut, that his application was accurate, the Immigration Judge scheduled a merits hearing for FATHI's refugee claim. Based on FATHI's own statements to an Immigration Judge in California, while FATHI's immigration hearings were pending in Connecticut, FATHI stated that he travelled to Los Angeles, California on or about September 2012 to stay with a friend and was sight-seeing.

22. FATHI was arrested in California for theft and while serving his state sentence in California, on or about December 6, 2012, law enforcement determined that FATHI was unlawfully in the United States and another immigration detainer was lodged. On or about January 11, 2013, FATHI's immigration case was transferred into ERO (Los Angeles) custody, pursuant to the second detainer.

23. FATHI's merits hearing was scheduled in or about August 2013. During his immigration hearing, FATHI, who continued to be represented by Connecticut counsel, testified under oath. FATHI further testified that he participated in his first demonstration in approximately 2004 or 2005. Contrary to his own written I-589 refugee application, in his testimony before the Immigration Judge, FATHI claimed to have been arrested for the first time by the Moroccan authorities in 2004 and testified to the immigration judge that he was arrested for a total of six or seven times for participating in various demonstrations. FATHI proceeded to

provide details of the arrests during the hearing.

24. FATHI was granted withholding of removal on or about August 16, 2013 and subsequently released from custody.

**C. <u>Fathi's Federal Criminal Investigation</u>**

25. A federal criminal investigation began in January 2014 when the FBI obtained information about FATHI's aspirations to bomb an educational institution outside Connecticut. Subsequently, during the course of the investigation, FATHI also began expressing his desire to bomb a federal building in Connecticut.

26. In January 2014, FATHI was residing in Bridgeport, Connecticut with an individual who he met while he was incarcerated in Virginia. FBI agents learned from ERO in Hartford, Connecticut, that FATHI's immigration file had been transferred to Connecticut because he was residing in Connecticut and that ERO was monitoring FATHI while he was released on an Order of Supervision.[4]

27. Based on information that the FBI received about FATHI's aspirations to conduct a bomb attack, the FBI was able to record some of FATHI's conversations with third parties. There are approximately five (5) recordings. Three were conducted in February 2014 and two in March 2014. FATHI speaks in Arabic and therefore the recordings have been translated by

[4] I, and others in my office, have consulted with Immigration / general counsel attorneys in the Department of Homeland Security's Immigration and Customs Enforcement offices in Boston and Washington, D.C. and provided information and evidence of FATHI's immigration fraud and his bomb threats. The FBI also indicated its willingness to cooperate on and support a motion to re-open FATHI's immigration proceedings in light of that evidence. To date, immigration authorities have not filed a motion to reopen FATHI's immigration proceedings. The Government is therefore requesting permission from this Court to provide a copy of this affidavit and all of the relevant attachments directly to the Executive Office for Immigration Review and the Immigration Judge who presided over FATHI's immigration proceedings insofar as they have independent authority to reopen FATHI's immigration proceedings *sua sponte*, should the immigration court desire to do so. *See, e.g.*, 8 C.F.R. Section 1003.23 ("An Immigration Judge may upon his or her own motion at any time . . . reopen or reconsider any case in which he or she has made a decision . . . ."); 8 C.F.R. Section 1208.24(f) ("An Immigration Judge or the Board of Immigration Appeals may reopen a case . . . for the purpose of terminating a grant of asylum, or a withholding of deportation or removal.").

Arabic speaking linguists for the FBI and summary translations have been provided to law enforcement actively working on the investigation.[5] The FBI is in the process of transcribing all of the recordings. The summary recordings and if necessary, actual transcribed recordings to the extent that they are available, will be provided to the Court with this application for an arrest warrant, if requested. FATHI made the following statements on the various recordings:

a. FATHI stated that he had lost hope to be released from prison until he spoke with a Nigerian national, who he met while incarcerated, who suggested to him that he apply for asylum. FATHI stated that he was not familiar with the asylum process and asked the Nigerian national to explain the process to him. FATHI stated that he went to the library and obtained the State Department's country reports for Morocco from 1999 to 2011 and read them. FATHI admitted that there were issues and abuses by the Moroccan government discussed in those reports that he had no knowledge of but he learned about them in prison. FATHI admitted that he searched for issues during the 2006-2007 time-frame because he left Morocco in 2008. FATHI stated that he learned about or found out about ansar El-Mehdi, and the Western Sahara movement and created his case around those issues. FATHI explained that he worked on the time-frame so that everything he wrote in his refugee application coincided with the actual events. FATHI went on to say that he fabricated his story while he was in prison.

b. FATHI stated that he claimed to belong to organizations calling for the independence of the Western Sahara. FATHI explained that he got the names that he used for his refugee claim from the country reports that he obtained from a computer and used the information in his case.

[5] As noted above, the conversations were, and the resulting recordings are, in Arabic. Verbatim transcriptions of the recordings, translated from Arabic to English, are being prepared, but they are not yet complete. The full recordings have been reviewed by FBI linguists fluent in Arabic, and *summary* translations and transcriptions, have been prepared. The descriptions of the recordings set forth herein are based on those summary translations and transcriptions.

FATHI claimed there is no proof that he is lying.  In one of the recordings, FATHI is clearly heard stating that the more he thinks about the case, he laughs because he cannot believe the judge believed him.  FATHI stated that he worked on creating his case for three months and studied all cases of asylum – not just in Morocco.

     c.  During some of the recorded conversations, FATHI also repeatedly confirmed his desire to bomb an educational university outside the State of Connecticut; and a federal building in Connecticut.  FATHI made reference to conducting a bombing attack at least two times on February 5th and February 8th and explained how and why he chose a certain location.

     d.  FATHI claimed that funding for his aspirational attacks comes from "accounts," or "secret accounts" and his (FATHI's) understanding is that the money comes from money laundering activities, including the fact that certain money comes from drug dealing.

     e.  On or about February 8, 2014, FATHI is heard being asked about pliers, a cutter and wires in his bedroom.  FATHI claimed in the recording that the materials were for a bomb.

     f.  FATHI stated in the recording that he would use airplanes, possibly toy planes to execute the bombing. Specifically FATHI stated that he was going to use a plane, a remote-controlled hobby-type airplane, to deliver the bomb.

     g.  FATHI claimed that he has been "studying" the bomb attack operation for months. FATHI stated that the bomb that he planned to use would be made for him and he claimed that everything is available in Southern California on the border.

     h.  In a recorded conversation, FATHI previously stated that immigration-related sites were not selected because they posed too many problems.  In a more recent recording, however, FATHI stated that he was interested in bombing a federal building / courthouse in Connecticut (which houses offices for Homeland Security Investigations).  FATHI was also recently recorded

stating that he made a chemical bomb when he was in high school in Morocco and he can be

heard explaining that there are three things that scare people in the United States: causing harm

to schools, the economy, and their sense of security. Finally, FATHI can be heard on the

recording talking about making pipe bombs and chemical explosives.

28.   On February 10, 2014, law enforcement visited FATHI at his residence at 243 High

Ridge Drive, Bridgeport, Connecticut, for the stated purpose of following up and questioning

FATHI about an incident in which he had previously filed a complaint with the Bridgeport

Police Department, alleging that he (FATHI) had been the victim of a crime. FATHI answered

the door, invited the officers in, and quickly identified himself by providing his expired Virginia

International University photo identification card.

29.   The officers were invited into the kitchen area of the residence. While in the kitchen,

officers observed various hand tools, including a screwdriver and a small black carrying case

placed next to a pair of black framed eye glasses.

30.   On or about February 17, 2014, a federal agent who is fluent in Moroccan

interviewed FATHI. In that interview, FATHI initially falsely claimed that his father was the

Governor of Marrakech and was able to financially provide for him. When the federal agent

confronted FATHI with the fact that his father was not the Governor of Marrakech, FATHI

retracted the statement. FATHI stated that his father would give money to families in Morocco

who have relatives or friends in the United States and that FATHI would then pick up the money

from them. FATHI refused to identify any of those individuals. FATHI also stated that when he

resided in Kenitra, he befriended an individual who was affiliated with ansar El-Mehdi. FATHI

told the federal agent that Moroccan Intelligence had arrested him as part of the conspiracy with

all of the other members of the Jamaat Ansar El-Mehdi. FATHI told the federal agent that his

(FATHI's) father used his connections to get him out of prison.

31. FATHI is currently subject to electronic monitoring by ERO in Hartford, he is not authorized to travel outside the State of Connecticut.

32. At a recent interview with ERO on or about February 26, 2014, FATHI was also asked to confirm information on a form for a travel document so that ERO could determine if a third country may be willing to accept him. During that interview he was again asked if he had ever been arrested in Morocco and he responded that he had not.

**REQUEST FOR SEALING**

33. Your affiant requests that the criminal complaint, affidavit, attachments and any associated documents be sealed until the execution of the arrest warrant and the arrest of FATHI. The government requests, however, that the Court permit the criminal complaint, affidavit and attachments to be provided to the defendant and any defense counsel once FATHI is in custody. As noted above, the government also requests permission, following FATHI's arrest, to provide a copy of the criminal complaint, affidavit and all of the relevant attachments to the Executive Office for Immigration Review and the Immigration Judge who presided over FATHI's immigration proceedings.

**CONCLUSION**

34. Based on all the foregoing there is probable cause to believe, and I do believe that FATHI has committed violations of Title 18, United States Code, Section 1001 (false statements); Title 18, United States Code, Section 1546 (procuring an immigration benefit by fraud); and Title 18, United States Code, Section 1621 (making false statement in immigration proceeding while under oath).

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

SPECIAL AGENT ANABELA SHARP
FEDERAL BUREAU OF INVESTIGATION

Sworn and subscribed to before me this 4th day of April 2014, at Bridgeport, Connecticut.

/s/ Holly B. Fitzsimmons, USMJ

HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE