UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| vs. : | CRIMINAL NO.  3:14CR163(JCH) |
| EL MAHDI SEMLALI FATHI : | October 6, 2014 |

### DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

#### Introduction

El Mehdi Semlali Fathi ("Mr. Semlali") is a young Moroccan man who came to this country as a university student, hoping to succeed as a student and stay here in this land of opportunity. He failed as a student and will remain here now only to serve whatever sentence this Court imposes as punishment for his perjury in seeking relief from removal based on a false claim of persecution in his native Morocco. For his offense, which he admitted before this Court on July 24, 2014, Mr. Semlali faces a possible sentence of up to five years' imprisonment, which the government has indicated it intends to seek because of what it asserts were Mr. Semlali's aspirations to conduct bomb attacks in the United States. The advisory sentencing range under the Sentencing Guidelines, as stipulated by the parties in their plea agreement and calculated in the Presentence Report ("PSR"), is 18-24 months, and in part that is premised upon an undisputed finding that Mr. Semlali is in criminal history category II, which significantly overstates the seriousness of the defendant's record. With a departure to category I, the advisory range would be lowered to 15-21 months.

Mr. Semlali committed the criminal offense for the sole purpose of staying in this country, not for any ulterior criminal purpose. He had no intention or aspiration to conduct any bomb attacks or other acts of violence and he should not be punished beyond the perjury itself for the conversations he engaged in with a government informant bent upon eliciting incriminating statements from Mr. Semlali. He has been jailed now since his arrest on April 7, 2014 and he will be removed to Morocco when he completes the sentence imposed by this Court, which should be guided by the advisory guidelines range but r3educed to reflect that this young man has no serious criminal history.

- 2 -

Discussion

1. <u>Mr. Semlali's History and Characteristics</u>

Mr. Semlali is a 27 year-old citizen of Morocco who was raised in a successful middle-class family. His father and mother were gainfully employed: his mother as a civil engineer employed by the government and his father by a company that assisted people in obtaining and registering titles to real estate. PSR ¶ 58. His family moved many times because his father's employment was relocated. Mr. Semlali is the eldest of four children, and all of his younger siblings are in school, with his sister attending college in Germany.

After graduating from high school in 2006, Mr. Fathi obtained further education in Morocco where he completed a business English course and a computer course. PSR ¶ 68. He worked for two companies as a computer programmer from 2006-07. PSR ¶ 71. Mr. Semlali sought to further his education and on August 16, 2007, at the age then of 19, he was accepted as a student at Virginia Internation University in Fairfax, Virginia, to study computer science. PSR ¶ 69. He then applied for a student visa, and was issued the visa on September 24, 2007. PSR ¶ 7. Four months later, on January 8, 2008, he entered the United States to attend school. PSR ¶ 8. Unfortunately, and like many students who do not succeed in college, Mr. Semlali failed his fall courses in 2008. He did not register as a student in the spring of 2009, which resulted in the termination of his student visa status in February, 2009. PSR ¶ 8.

Mr. Semlali, still supported by his parents, PSR ¶ 70, stayed in Virginia after failing at the university, first with roommates in an apartment and then in a room with a family. PSR ¶ 54. In 2011 he was arrested for trespassing when he went onto the university campus and, while in custody, the Immigration Custom Enforcement Agency ("ICE") determined that his student visa had been terminated and he was detained until his release on bond. PSR ¶¶ 9, 55. Removal proceedings were commenced and in April of 2011 he was determined to be removable. PSR ¶ 10. Mr. Semlali, as noted above, had been released on bond and he moved to Bridgeport where he lived for about a year and a half with friends of other friends he had made while living in Virginia. PSR ¶ 55. In September, 2012

he moved to California, again staying with a friend he had met at the university. PSR ¶¶ 16, 56.

Mr. Semlali was arrested in California on December 6, 2012 and charged with a theft offense for which he was sentenced to 90 days' jail and for which he served 47 days before being transferred to federal custody pursuant to an immigration detainer. PSR ¶ 43. The criminal charge arose when Mr. Semlali took library books to read in the library cafeteria without first checking them out. The immigration case had been transferred to Connecticut and then to California as Mr. Semlali relocated, and on August 16, 2013 the immigration court in California granted withholding of removal and Mr. Semlali was later released from custody and he moved back to Bridgeport. PSR ¶¶ 17-18, 57.

As part of his plea agreement, Mr. Semlali agreed to the reopening of his immigration proceedings and to the entry of a final order of removal. In conformity with the conditions of the plea agreement, four days after Mr. Semlali's plea, through counsel, wrote to the immigration judge and acknowledged falsifying his refugee application and committing perjury and further stated that he did not oppose the reopening of the proceedings and the entry of a final order of removal to Morocco.

2. The Nature and Circumstances of the Offense

The PSR sets forth the details of the instant offense and Mr. Semlali has not objected to what is reported. In essence, while in ICE custody in Virginia after his trespass arrest and facing removal because he was no longer a student, and with the guidance of another inmate who told Mr. Semlali about the refugee application process, he completed and filed an application for relief from removal based on a false claim that he had been persecuted in Morocco and would be persecuted if returned to his native country. PSR ¶¶ 12-13. Thereafter, he testified falsely in support of the application. PSR ¶¶ 16-17. As Mr. Semlali explained in a conversation recorded by an informant, he "lost hope to be released from prison until he spoke with a Nigerian national, who he met while incarcerated and suggested that he apply for asylum." PSR ¶ 20. Thus began Mr. Semlali's process of preparing and filing the application for refugee status premised upon his false claim of having been persecuted by the Moroccan government that culminated in his perjury and the granting of the application.

The PSR comments that "Mr. Fathi's focus and attention to learning, building and then reporting

- 4 -

a complete lie, all for a selfish reason, shows a direct disregard for the laws of the United States." PSR ¶ 92. That his crime was undertaken for selfish reasons does not aggravate the offense. The purpose of most, if not all, immigration offenses is selfish: *i.e.*, to enter and/or remain in the United States because life in this country is believed to be better than life in the offender's native country. In his case, Mr. Semlali came to the United States legally to study at a university, undoubtedly hoping that he could later extend his lawful status. When he failed as a student and lost his legal status and faced removal and return to his native Morocco, he fabricated a tale of persecution. It may be said that he went to great length to do so, but that was inherent in how he sought to remain a resident of this country. While most persons who unlawfully enter or remain in this country use other means, their crimes are also selfish and their means are typically well organized and require planning and execution that may entail traveling thousands of miles to reach our borders.

3. <u>Tailoring a Sentence to Achieve the Objectives of Sentencing</u>

In the decade since *Booker* was decided, sentencing courts have used the calculated advisory Sentencing Guidelines imprisonment range as a benchmark in fashioning a sentence that satisfies the mandate of 18 U.S.C. § 3553(a) to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." Those purposes are:

> (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2). In this case, a sentence within the calculated guideline range of 18-24 would be longer than necessary to achieve these objectives.

The advisory sentencing ranges result from the guidelines' measures of offense seriousness and its measure of a defendant's criminal history. The longer sentences for persons with prior convictions is premised on several considerations: such an offender is deemed to be more culpable than a first

offender; general deterrence requires that repeated crimes will increase the need for punishment; and repeated criminal conduct demonstrates a lower likelihood of rehabilitation. U.S.S.G. Ch. Four, Intro. Comm.  These considerations may be of lesser weight for some offenders, as expressly recognized in the body of the criminal history guidelines. More specifically, the guidelines state: "If reliable information indicates that the defendant's criminal history category significantly overstates the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted." U.S.S.G § 4A1.3(b)(1).

Mr. Semlali is in criminal history category II as a result of a 90 day sentence imposed for a theft conviction related to his unauthorized removal of books from a library. He served 47 days in jail for that conviction, his only conviction. The nature and circumstances of his prior crime do not portray a young man bent on criminal activity and likely to commit offenses after he serves the sentence imposed by this Court and is deported to Morocco. Nor was the offense itself so serious as to necessitate a longer sentence to drive home the point to Mr. Semlali that criminal conduct will be punished. He has already served a substantial amount of time in custody for the California conviction, the immigration proceedings, and his federal offense, and deterrence has been achieved. The need for a higher sentence for a prior offender do not require that the sentence here be even marginally longer because Mr. Semlali has a prior conviction. Accordingly, the Court can and should depart to criminal history category I and find that the advisory guidelines sentencing range is 15-21 months.

A sentence at the bottom of this advisory range would suffice as a measure of the seriousness of the offense itself, would be just punishment and would promote respect for the law. Although the "selfish" and planned nature of the offense do not aggravate the crime, the offense was serious in its planning, execution, duration and effect. Indeed, the advisory sentencing range is increased by three levels under U.S.S.G. § 2J1.3(a) because the offense caused substantial interference with the administration of justice. That adjustment is intended to and does reflect that the instant offense was more serious than others and warrants a higher benchmark sentencing range. In short, the advisory range, reduced slightly to acknowledge that Mr. Semlali's record does not require a higher sentence to

- 6 -

reflect either his record or the risk of future criminal conduct, is sufficient to serve the core purpose of reflecting the seriousness of the offense and providing just punishment that promotes respect for the law.

The government has stated that it will seek an upward departure because of Mr. Semlali's aspirations to commit bomb attacks. Based on information provided by the government, the PSR discusses these "aspirations." PSR ¶¶ 19, 22-26. Mr. Semlali had neither means nor motive, nor intention or aspiration to commit any such acts. His statements were largely elicited by and in response to inquiries by a government informant. Other than talk, Mr. Semlali never took any steps toward committing any such acts. Rather, his statements were nothing more than far-fetched, foolish and false statements. For example, in one of the recordings, Mr. Semlali was asked about training he received in Afghanistan. He has never been to Afghanistan or received any training, but he replied that he was trained about weapons, radio communications, intelligence gathering and deceit. Another tall tale told to the informant was that he worked on the events of 2001. At that time he was a 14 year-old boy living with his parents in Morocco. Mr. Semlali should not be punished for the stupid things he said to the informant, which did not reflect any genuine "aspirations" on his part, which were entirely unrealistic and far-fetched even as ideas, and which never advanced beyond conversations with the informant.

## Conclusion

El Mehdi Semlali Fathi came to this country lawfully in 2009 with dreams of a young man. He failed, and his innocent dreams of youth became the sad reality of a young man, no longer innocent, now jailed for his admittedly unlawful efforts to stay in the United States and facing yet more time in prison for his criminal conduct. Mr. Semlali poses neither a threat of future criminal conduct nor any danger to our national security. The Court should impose a sentence that does not imprison Mr. Semlali longer than a term at the bottom of the advisory guidelines range, which will be a sufficiently punitive experience that Mr. Semlali will remember for the balance of his hopefully long and successful life in Morocco.

- 7 -

Respectfully submitted,

THE DEFENDANT,
El Mehdi Semlali Fathi

FEDERAL DEFENDER OFFICE

Dated: October 6, 2014             /s/ Paul F. Thomas


Paul F. Thomas
Assistant Federal Defender
265 Church Street, Suite 702
New Haven, CT 06510
Phone: (203) 498-4200
Bar no.: ct01724
Email: paul_thomas@fd.org


CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 6, 2014, a copy of the foregoing Defendant's Memorandum in Aid of Sentencing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.


/s/ Paul F. Thomas
Paul F. Thomas