## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| vs. | : | CRIMINAL NO.  3:14CR163(JCH) |
| | : | |
| EL MEHDI SEMLALI FATHI | : | October 10, 2014 |

### **DEFENDANT'S REPLY TO SENTENCING MEMORANDUM OF THE UNITED STATES**

### Introduction

What the government is urging upon the Court is worthy of Kafka and Orwell. It seeks the maximum sentence authorized by law for the offense of conviction based on what it characterizes as the defendant's "aspirations" to commit a far more serious offense that was not charged, was not proven and did not occur. In abstract terms, the government investigated the defendant for possible involvement in an extremely serious crime and in the course of its investigation learned that he had committed a different offense. The investigation did not establish that the more serious offense had been committed. The government charged the defendant with perjury in violation of 18 U.S.C. § 1621, the offense he committed and to which he pled guilty. Now, the government asks this Court to punish the defendant for a crime he did not commit. That is wrong.

### Discussion

The government argues for a non-guidelines sentence at the top of the statutory range for two reasons: 1) to promote respect for the law and deter abuse of the asylum process and 2) to send "a clear message that threats to our national security will not be tolerated." Neither reason supports a sentence above the guidelines range.

The sentencing range in this case derives from U.S.S.G. § 2J1.3, which sets a base offense level of 14 for perjury, the offense in this case. The gravamen of the crime was that Mr. Semlali lied to obtain relief from removal in presenting a false claim that he was persecuted in his native country and would face persecution upon his return. Notably, base offense levels for comparable immigration offenses are lower. See U.S.S.G. §§ 2L2.1 (base offense level 11 for false statement in respect to the citizenship of another); 2L2.2 (base offense level 8 for fraudulently acquiring documents relating to legal resident status). In this case, the base offense level is increased by three levels because it "resulted in substantial interference with the administration of justice[.]" The combined base offense level and specific offense characteristic properly and adequately measure the seriousness of the offense which, by its nature in the context of seeking asylum, entails ongoing activity to obtain the relief sought. A sentence within the guideline range is sufficient to achieve the goal of sentencing cited by the government – general deterrence of persons who might be inclined to abuse the asylum process. But this is not the main thrust of the government's argument for the maximum sentence. Rather, it is national security.

National security is a paramount goal that can support a host of governmental actions, but it is not a concept that should override well established principles of law, although history is replete with instances when it has done just that. In this case the government conducted an investigation of Mr. Semlali because of legitimate concerns about whether he was engaging in activities that were either criminal or preliminary to committing a crime that would threaten national security. It recorded conversations Mr. Semlali had with an informant. It conducted "constant surveillance." Sentencing Memorandum of the Government at 7. The government asserts that Mr. Semlali made "aspirational statements about engaging in bomb attacks in Massachusetts and Connecticut." Id. at 2.

The summaries of the recordings provided to the Court and to counsel include discussions of

possible bomb attacks, but the reality of any plan, intention or aspiration is belied by the absence of any evidence to show that Mr. Semlali took steps or had the means to accomplish his purported aspirations. Conversely, the recorded statements not cited by the government, i.e., tall tales about Mr. Semlali's training in Afghanistan and working on the events of 2001 and Boston, and working with Moroccan intelligence and Interpol, and spending 25 years reading and learning about people, demonstrate the lack of any reality to what the government considers a threat to our national security. And, evidently, the "constant surveillance" turned up nothing to substantiate any such threat.

In discussing Mr. Semlali's perjury offense, the government concludes that he "created detailed fantasies of his life in Morocco which involved subversive and violent acts." Id. at 11. This same conclusion eludes the government in assessing the recorded conversations. The government concedes that the evidence it obtained is unclear in critical respects: was there a connection between the perjury and his discussions about bomb attacks, and would he have acted on his "stated intentions." Id. at 4. It acknowledges that his statements may have been "deeply misguided." Id. Yet, without being able to answer these questions, the government maintains that he must be punished because his conduct is "deeply disturbing." Id.

Sentencing courts are given broad discretion to consider information about a defendant's background, character and conduct in tailoring a sentence to fit the offender and the offense. See 18 U.S.C. §§ 3661 and 3553(a). Indeed, the rules of evidence do not apply at sentencing hearings. Fed. R. Evid. 1101(d)(3). Nonetheless, the information relied upon must be reliable and probative, established by a preponderance of the evidence, and relevant to a sentencing factor pertinent to the determination of an appropriate sentence for the offense of conviction. See United States v. Vaughn, 430 F. 3rd 518, 527 (2nd Cir. 2005).

The government repeatedly characterizes Mr. Semlali's comments as "disturbing," yet it concedes, as it must given the apparent lack of evidence to show any actual criminal conduct other than the offense of conviction, that the evidence is "unclear" about "whether [Mr. Semlali] would have acted on his stated intentions." Sentencing Memorandum of the United States at 4. Nonetheless, the government insists that a maximum term of prison is needed to send "a clear message that threats to our national security will not be tolerated." This case and this defendant, quite simply, are not the appropriate means to serve that purpose. Nor is vindication of law enforcement investigative efforts an appropriate rationale for punishing Mr. Semlali for a crime that was investigated but not substantiated. *See* Sentencing Memorandum of the United States at 12 ("A significant prison sentence of up to five years for [Mr. Semlali] – who has caused so much concern for law enforcement and the institutions that he sought to harm in our country – can serve as a powerful deterrent against the commission of these types of threats.")

**Conclusion**

Mr. Semlali committed the crime of perjury in the course of his fabricated claim of persecution in connection with his application for refugee status. That is the crime for which he should be sentenced, and the benchmark range set by the Sentencing Commission for the offense is the right range of punishment in this case.

        Respectfully submitted,

        THE DEFENDANT,
        El Mehdi Semlali Fathi

        FEDERAL DEFENDER OFFICE

Dated: October 10, 2014        /s/ Paul F. Thomas
        Paul F. Thomas
        Assistant Federal Defender
        265 Church Street, Suite 702
        New Haven, CT 06510
        Phone: (203) 498-4200
        Bar no.: ct01724
        Email: paul_thomas@fd.org

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 10, 2014, a copy of the foregoing Defendant's Reply to Sentencing Memorandum in of the United States was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

        /s/ Paul F. Thomas
        Paul F. Thomas